Case 3:14-cv-00302-RPC-JVW   Document 8   Filed 04/03/14   Page 1 of 13

IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

TRENT ROLLINS,                              :
                                            :
          Plaintiff                         :
                                            :
     v.                                     :   CIVIL NO. 3:CV-14-302
                                            :
SERGEANT O'DONNELL, ET AL.,                 :   (Judge Conaboy)
                                            :
          Defendants                        :

**MEMORANDUM**
**Background**

This pro se civil rights action pursuant to 42 U.S.C. § 1983 was initiated by Trent Rollins (Plaintiff), an inmate presently confined at the Mahanoy State Correctional Facility, Frackville, Pennsylvania (SCI-Mahanoy). Plaintiff has also submitted an application requesting leave to proceed in forma pauperis. For the reasons outlined below, Rollins' Complaint will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

Named as Defendants are three SCI-Mahanoy employees: Superintendent John Kerestes; Sergeant O'Donnell; and Disciplinary Hearing Officer (DHO) D. Bunner. Plaintiff states that on April 1, 2013 he was issued an institutional misconduct by Sgt. O'Donnell charging him with threatening another person and using abusive, obscene or inappropriate language to or about an employee. See Doc. 1, Exhibit A. Following an April 10, 2013 disciplinary hearing before DHO Bunner Rollins was found guilty of both charges and was

1

sanctioned to serve a thirty (30) day term of disciplinary custody.

The findings of guilt were upheld by Superintendent Kerestes following an administrative appeal. See id. at Exhibit C. Following a further administrative appeal to the DOC's Chief Hearing Examiner, the finding of guilt with respect to the charge of threatening another person was overturned. However, the finding of guilt on the remaining charge as well as the disciplinary sanction imposed were upheld. See id. at Exhibit D.

Rollins' pending complaint contends that the disciplinary charge was filed in retaliation for his exercise of his right of freedom of speech. He adds that the subsequent decisions rendered by DHO Bunner and Superintendent Kerestes violated his constitutional due process rights. As relief, Plaintiff seeks an award of compensatory and punitive damages.

## Discussion

**Standard of Review**

28 U.S.C. § 1915 imposes obligations on prisoners who file civil actions in federal court and wish to proceed in forma pauperis under 28 U.S.C. § 1915, e.g., that the full filing fee ultimately must be paid (at least in a non-habeas suit) § 1915(e)(2) provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious;

2

>    (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

When considering a complaint accompanied by a motion to proceed in forma pauperis, a district court may rule that process should not be issued if the complaint is malicious, presents an indisputably meritless legal theory, or is predicated on clearly baseless factual contentions. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989); Wilson v. Rackmill, 878 F.2d 772, 774 (3d Cir. 1989). Indisputably meritless legal theories are those "in which either it is readily apparent that the plaintiff's complaint lacks an arguable basis in law or that the defendants are clearly entitled to immunity from suit ... ." Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990) (quoting Sultenfuss v. Snow, 894 F.2d 1277, 1278 (11th Cir. 1990)).

The United States Court of Appeals for the Third Circuit has added that "the plain meaning of 'frivolous' authorizes the dismissal of in forma pauperis claims that . . . are of little or no weight, value, or importance, not worthy of serious consideration, or trivial." Deutsch v. United States, 67 F.3d 1080, 1083 (3d Cir. 1995). It also has been determined that "the frivolousness determination is a discretionary one," and trial courts "are in the best position" to determine when an indigent litigant's complaint is appropriate for summary dismissal. Denton v. Hernandez, 504 U.S. 25, 33 (1992).

3

**Personal Involvement**

With respect to the due process claim raised against Superintendent Kerestes, civil rights claims cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Prisoners also have no constitutionally protected right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")

While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the

4

right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance. See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure). Pursuant to those decisions, any attempt by a prisoner to establish liability against a correctional official based upon their handling of his administrative grievances or appeals does not support a constitutional claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

Pursuant to the standards announced in Rode and Hampton, Plaintiff's action to the extent that it seeks to establish liability against Superintendent Kerestes based upon either his supervisory capacity within SCI-Mahanoy or his response to Plaintiff's administrative appeal is inadequate.

**Due Process**

A plaintiff, in order to state a viable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or

5

immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

The Fourteenth Amendment of the United States Constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  The Supreme Court has mandated a two-part analysis of a procedural due process claim:  first, "whether the asserted individual interests are encompassed within the . . . protection of 'life, liberty or property[,]'" and second, "if protected interests are implicated, we then must decide what procedures constitute 'due process of law.'"  Ingraham v. Wright, 430 U.S. 651, 672 (1977). If there is no protected liberty or property interest, it is obviously unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred.

Liberty interests protected by the Fourteenth Amendment may arise either from the Due Process Clause itself or from state law. Meachum v. Fano, 427 U.S. 215, 223-26 (1976).  In Wolff v. McDonnell, 418 U.S. 539, 563-73 (1974), the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  Id. at 556. Nonetheless, the Supreme Court held that a prisoner facing serious institutional sanctions is entitled to some procedural protection

6

before penalties can be imposed. Id. at 563-71. The Supreme Court set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. Id. An additional procedural requirement was set forth in Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill, 472 U.S. 445, 453-56 (1985). In Hill, the Supreme Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal.

In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court reiterated that the due process safeguards set forth in Wolff must be provided when the challenged disciplinary proceeding results in a loss of good time credits. However, Sandin focused the liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner. Id. at 481. In Sandin the Supreme Court reasoned, inter alia, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence. Id. at 485. The nature of an inmate's confinement in disciplinary

7

segregation was found similar to that of inmates in administrative segregation and protective custody at his prison. Id. at 486.

Focusing on the nature of the punishment instead of on the words of any regulation, the Supreme Court held that the procedural protections in Wolff were inapplicable because the "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Id. The Court examined the nature of disciplinary segregation and found that "[b]ased on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a major disruption in his environment." Id. In the final holding of the opinion, the Court stated that neither the state prison regulation in question, nor the Due Process Clause itself, afforded a protected liberty interest that would entitle state prisoners to the procedural protections set forth in Wolff." See id. at 487 (emphasis added).[1]

Courts within this circuit, applying Sandin in various actions, have found no merit in procedural due process claims

---

1. The Sandin Court relied on three factors in making this determination: (1) confinement in disciplinary segregation mirrored conditions of administrative segregation and other forms of discretionary confinement; (2) based on a comparison between inmates inside and outside segregation, the state's action in placing the inmate there did not work a major disruption in the inmate's environment; and (3) the state's action did not inevitably affect the duration of inmate's sentence.

presented regarding institutional disciplinary hearings which resulted in disciplinary custody placement longer than the period at issue herein.  See Torres v. Fauver, 292 F.3d 141, 150-51 (3d Cir. 2002)(because prisoners can reasonably anticipate transfer to disciplinary custody, placement in segregation as a disciplinary sanction did not implicate a protected liberty interest); Smith v. Mensinger, 293 F.3d 641, 645, 654 (3d Cir. 2002)(seven (7) months of disciplinary confinement did not implicate liberty interest).

In Diaz v. Canino, 2012 WL 5352483 *3 (3d Cir. Oct. 31, 2012), the Third Circuit Court of Appeals reiterated that the sanctions resulting from prison disciplinary hearings do not affect a protected liberty interest unless the sanction imposes an atypical and significant hardship on the inmate.  In Diaz, the Court of Appeals concluded that a 360 day term of disciplinary confinement did not implicate a protected liberty interest. Considering the rules of law set forth in Sandin and the subsequent line of decisions by the Third Circuit Court of Appeals, this Court finds that Plaintiff's due process claims are meritless because the period of thirty (30) days of disciplinary confinement imposed as the result of the misconduct charge does not set forth a viable constitutional claim because he had no protected liberty interest.[2]

Since there is no claim by Rollins that he was sanctioned to a loss of good time credits or any other sanction which adversely

---

2.  It is noted that although one disciplinary charge against Rollins was dismissed on administrative appeal the remaining finding of guilt and the disciplinary sanction of disciplinary confinement were upheld.

9

affected the duration of his confinement, a viable due process claim has not been set forth.

**Retaliation**

The Complaint also includes a vague allegation that the issuance of the misconduct charge was retaliatory. To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." (Id.)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." (Id.)(quoting Suppon v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." Rauser, 241 F.3d at 333-34(quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.³ See Lape v. Pennsylvania, 157 Fed. App'x. 491, 498 (3d Cir. 2005).

---

3. Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation. Krouse v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

10

Once Plaintiff has made a <u>prima</u> <u>facie</u> case, the burden shifts to the Defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." <u>Carter v. McGrady</u>, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted).  When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned.  <u>Rauser</u>, 241 F.3d at 334.

Plaintiff acknowledges that when he made remarks regarding the murders of two Texas state prosecutors which were overheard by a correctional officer he received a misconduct based upon the officer's determination that the remarks constituted a verbal threat.  It is noted that with respect to the second charge Plaintiff does not dispute that he made an obscene remark to a correctional officer.

While Rollins' statement was clearly insensitive, this Court agrees with the DOC's ultimate determination that the words did not constitute a threat.  However, the allegations do not adequately support a claim that the disciplinary charge was issued in retaliation for a prisoner's exercise of a constitutionally protected right.  Rather, this is simply a case where the Plaintiff was issued a misconduct based upon a correctional officer's determination that the substance of prisoner's remarks constituted a threat and the use of obscene language.  There are no facts

11

alleged which could show that Rollins was given a misconduct solely for exercising free speech.  Second, Plaintiff does not dispute that he made an obscene remark to a correctional officer, conduct which by itself warranted the issuance of a misconduct.  As such, Plaintiff was not adequately shown that his engagement in constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him.

Moreover, given that Plaintiff was found not guilty of the threatening remarks charge, it is questionable as to whether the adverse action at issue was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights. Based upon an application of Rauser to those allegations, this Court is satisfied that Plaintiff has not adequately set forth a claim of retaliation.

**Conclusion**

Since Plaintiff's complaint is "based on an indisputably meritless legal theory," it will be dismissed, without prejudice, as legally frivolous.  Wilson, 878 F.2d at 774.  Under the circumstances, the court is confident that service of process is not only unwarranted, but would waste the increasingly scarce judicial resources that § 1915 is designed to preserve.  See Roman, 904 F.2d at 195 n.3.  An appropriate Order will enter.

            S/Richard P. Conaboy
            RICHARD P. CONABOY
            United States District Judge

DATED: APRIL 3 , 2014